Shirlene ANDERSON et al.,
Plaintiffs–Appellants,

v.

William Forrest WINTER, etc. et al.,
Defendants–Appellees.

No. 80–3149
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 4, 1980.

Robert H. Taylor, Jr., Jackson, Miss., for plaintiffs–appellants.

J. Stephen Wright, Larry J. Stroud, Spec. Asst. Attys. Gen., Jackson, Miss., for defendants–appellees.

Darold L. Rutland, Jackson, Miss., for James Finch, Commission of Public Safety.

Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.

CHARLES CLARK, Circuit Judge.

This appeal challenges the constitutionality of the dual retirement system provided for Mississippi state employees. The plaintiffs, present and former agents of the Mississippi Bureau of Narcotics,[1] claim that the state scheme denies them equal protection and substantive due process because they are ineligible for the more liberal retirement and disability benefits provided for officers of the Mississippi Highway Safety Patrol. The district court granted summary judgment for the defendants,[2] and we affirm.

Mississippi has established two separate retirement systems for state employees. The plaintiffs, along with the vast majority of state employees in Mississippi, participate in the general Public Employees' Retirement System. Mississippi Code Ann. §§ 25–11–101 et seq. Officers of the Mis-sissippi Highway Safety Patrol, however, enjoy substantially more favorable benefits under a retirement and disability scheme enacted solely for them. Mississippi Code Ann. §§ 25–13–1 et seq. The purpose of the Highway Safety Patrol Retirement System is "to provide more liberal benefits for the highway safety patrolmen by reason of the dangerousness of their employment." Mississippi Code Ann. § 25–13–1 (1972). The plaintiffs brought this lawsuit to challenge this two–track retirement and disability scheme, claiming that their exclusion from the superior retirement program available only to highway patrolmen denies them the equal protection of the laws and the substantive due process rights secured by the fourteenth amendment. The plaintiffs' primary contention is that their work as undercover narcotics agents exposes them to hazards equal to or greater than those confronted by the uniformed highway patrolmen. Since narcotics agents and highway patrolmen are similarly situated, they insist that the differential treatment accorded by the Mississippi retirement systems is unconstitutional.

On appeal the plaintiffs object that the district court's grant of summary judgment was inappropriate because a genuine issue of material fact existed over whether the duties performed by agents of the narcotics bureau are as dangerous as those performed by officers of the highway patrol. In support of their motion for summary judgment, the defendants submitted numerous affidavits to show that the responsibilities of highway patrolmen involved greater perils than those performed by narcotics

---

1. As of December 20, 1979, plaintiffs Steve Ford; Brenda Hyde; Fred Lovett, Jr.; James Moore; Eddie Day; and Barry Newsome had resigned from the Bureau. The district court held that these persons were without standing to contest the constitutionality of Mississippi's state employee retirement system, and the plaintiffs do not challenge that conclusion.

2. The plaintiffs initially sued fourteen persons in their official capacities. Six of the fourteen original defendants no longer hold office, and the defendants move that their successors be substituted as parties pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure.

Accordingly, the following substitutions have been made: (1) Governor William Winter for former Governor Cliff Finch; (2) Lt. General Sidney Berry, U.S. Army Retired, for former Commissioner of Public Safety James Finch; (3) Director of the Mississippi Bureau of Narcotics Thomas Dial for former Director Chester Quarles; (4) State Representative Edwin Perry for former Representative Charles Deaton; (5) State Treasurer John Dale for former Treasurer Ed Pittman; and (6) Elmo Overby, member of the Board of Trustees of the Public Employees' Retirement System of Mississippi, for former Board Member C.H. Cain.

agents. The plaintiffs point out that this conclusion was not uncontroverted. Indeed, they argue, the affidavit of Dr. Chester Quarles, itself submitted in support of the defendants' motion, created an issue of fact that should have prevented summary judgment. Dr. Quarles, the former director of the Mississippi Bureau of Narcotics, stated that he believed that the work of the narcotics agents was "equally as perilous" as the work of highway patrolmen. He also suggested that undercover narcotics work was "the most dangerous area" of the Bureau's efforts because drug suspects who might otherwise never attack a police officer might attempt to kill an undercover agent in the mistaken belief that he was an informant.

■ Nevertheless, even if the plaintiffs are correct in their contention that narcotics bureau agents perform duties that are at least as hazardous as duties performed by the highway safety patrol, the district court correctly granted summary judgment to the defendants. Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A district court considering a motion for summary judgment must view the evidence in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962); *Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 609 (5th Cir. 1979); *BAW Manufacturing Co. v. Slaks Fifth Avenue, Ltd.*, 547 F.2d 928, 930 (5th Cir. 1977). In reviewing the district court's action, the appellate court employs the same standards. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962); *O'Boyle Tank Lines, Inc. v. Beckham*, 616 F.2d 207, 209 (5th Cir. 1980); *BAW Manufacturing Co., supra.* Thus, "the party who defended against the motion for summary judgment will have the advantage of the court's reading the record in the light most favorable to him, will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant." 10 Wright & Miller, Federal Practice and Procedure: Civil § 2716, at 430–432 (1973) (footnotes omitted). Despite these procedural advantages, the plaintiffs' argument cannot be sustained. There may be a real disagreement over whose duties are more dangerous. However, the party resisting summary judgment must show that a genuine issue exists as to a *material* fact, and the relative perils faced by officers in each of the two law enforcement agencies are simply not relevant to the plaintiffs' claim that they have been denied equal protection or due process.

■ The equal protection clause of the fourteenth amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." It embodies the fundamental principle of American constitutionalism that the state must govern impartially. Nevertheless, a state's regulation of social and economic matters does not violate this principle "merely because the classifications made by its laws are imperfect." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970). In this context, the dictates of equal protection are less exacting than where a state's classification impinges upon some fundamental personal right or where it is drawn along some inherently suspect line such as race, religion, or alienage. In accordance with this comparatively relaxed standard of review for social and economic regulation, the decisions of the Supreme Court "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 517 (1976). This rational–basis test reflects an awareness that "the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 525 (1976). Therefore, courts will not strike down state laws regulating economic and social concerns merely "because they may

be unwise, improvident, or out of harmony with a particular school of thought." *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563, 572 (1954). If the challenged classification bears a reasonable relationship to the accomplishment of some legitimate governmental objective, the statute must be upheld.

The parties agree that the rational-basis standard governs this appeal. Under that constitutional rubric, a court will not set aside a state's statutory classification "if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961). The defendants suggest that Mississippi has a legitimate interest in attracting the most capable and qualified persons to serve as officers in the Highway Safety Patrol. They also submit that the legislative decision to offer more liberal retirement and disability benefits to compensate for the increased danger confronting highway patrolmen is a rational method for the accomplishment of that goal. The plaintiffs concede both points. Their only objection is that the preferential retirement scheme is underinclusive. Since highway patrolmen receive enhanced benefits to compensate for hazardous duty and because their own work as narcotics agents is also dangerous, plaintiffs maintain that they should be provided retirement and disability benefits equivalent to those provided to officers of the Highway Safety Patrol. This argument is reasonable, but it is made in the wrong forum. It must be addressed to the Mississippi legislature. In effect, the plaintiffs would ask the federal judiciary to establish fiscal priorities for the state of Mississippi and to set goals for it to accomplish. But the Constitution does not demand that much. The fourteenth amendment does not give courts the power to impose upon a legislature their conceptions of what wise social and economic policy would be. A statute is not invalid under the Constitution because it might have gone farther than it did. *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 337, 73 L.Ed. 722, 728 (1928). A legislature need not strike at all evils at the same time. *Semler v. Oregon State Board of Dental Examiners*, 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086, 1088 (1934). On the contrary, the equal protection clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all. *Dandridge v. Williams*, 397 U.S. at 486–87, 90 S.Ct. at 1162, 25 L.Ed.2d at 503. Mississippi could reasonably conclude that it must establish an adequate highway patrol force before attempting to accomplish other law enforcement goals. The decision as to whether prudent law enforcement policy indicates Mississippi should provide the same or equivalent retirement and disability benefits for agents of the Bureau of Narcotics that officers of the Highway Safety Patrol enjoy is the prerogative of the Mississippi legislature. The Constitution does not authorize a federal court to interfere in that policy decision. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 1370, 59 L.Ed.2d 587, 607 (1979).

The plaintiffs' due process attack must likewise fail. The test of constitutional validity for statutes regulating social and economic affairs is the same as that employed under the equal protection clause. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 770, 95 S.Ct. 2457, 2469, 45 L.Ed.2d 522, 541 (1975); *Bussey v. Harris*, 611 F.2d 1001, 1006 (5th Cir. 1980).

Whether undercover narcotics work is as dangerous as highway patrol duties is not relevant to the plaintiffs' constitutional challenge. The district court correctly concluded that no genuine issue of material fact existed and that the defendants were entitled to judgment as a matter of law.

AFFIRMED.